# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
No. 20-1715V
UNPUBLISHED

| | |
|---|---|
| GORDEN COLLINS,<br><br>              Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>              Respondent. | Chief Special Master Corcoran<br><br>Filed: May 8, 2023<br><br>Special Processing Unit (SPU); Entitlement to Compensation; Ruling on the Record; Findings of Fact; Tetanus Diphtheria Acellular Pertussis Vaccine; Shoulder Injury Related to Vaccine Administration (SIRVA); |

*Ronald Craig Homer*, Conway, Homer, P.C., Boston, MA, for petitioner.

*Lauren Kells*, U.S. Department of Justice, Washington, DC, for respondent.

### RULING ON ENTITLEMENT[1]

On December 1, 2020, Gorden Collins filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleges that he suffered a shoulder injury related to vaccine administration ("SIRVA") caused by a Tetanus-diphtheria-acellular-pertussis ("Tdap") vaccine administered on July 7, 2018. Petition at 1. The case was assigned to the Special Processing Unit of the Office of Special Masters. For the reasons described below I find that Petitioner is entitled to compensation.

---

[1] Because this unpublished fact ruling contains a reasoned explanation for the action in this case, I am required to post it on the United States Court of Federal Claims' website in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services). **This means the fact ruling will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

## I. Relevant Procedural History

Petitioner filed this claim on December 1, 2020. ECF No. 1. A year later, on February 7, 2022, Respondent filed a status report stating that he was willing to engage in damages discussions. ECF No. 34. However, those discussions did not succeed, and on April 19, 2022, Respondent filed a Rule 4(c) Report recommending that entitlement be denied. ECF No. 38.

Petitioner subsequently filed a Motion for a Ruling on the Record on July 15, 2022 ("Mot."). ECF No. 43. Petitioner argues therein that he meets the Table Claim requirements for a SIRVA. Mot. at 29-38. Respondent filed a response on August 26, 2022. Respondent's Response to Petitioner's Motion for Ruling on the Record ("Opp."), ECF No. 45. Respondent argues that Petitioner has failed to meet the requirements of a Table claim because Petitioner alleges a right SIRVA but received the Tdap vaccine in his left arm. Opp. at 12-13.[3] Petitioner filed a status report on September 1, 2022 indicating that he would not file a reply. ECF No. 46.

## II. Petitioner's Medical Records

On July 7, 2018, Petitioner received a Tdap vaccine during an emergency room visit due to a right finger injury. Ex. 2 at 188-93, 216-18; Ex. 8 at 827. The vaccine administration record states that the Tdap vaccine was given in Petitioner's left shoulder. Ex. 8 at 827. Two days later, on July 9, 2018, Petitioner saw a primary care provider for a follow-up regarding his finger pain. Ex. 3 at 34. Petitioner now also reported *right* shoulder pain "regarding Td vaccination". The record notes redness and swelling at the right side injection site. *Id.*

Petitioner presented to Waterboro Walk-In Clinic on October 19, 2018, for "[r]ight arm pain from a tetanus 7/7/18". Ex. 2 at 179. The record also states that Petitioner "[r]ecived Tdap in right deltoid" on July 7, and the next day "he had severe pain at the injection site." *Id.* An x-ray was preformed and noted "3 months right shoulder pain-deltoid. Started after Tdap…." *Id.* at 178. He reported pain radiating down to his elbow, increased pain with abduction, extension, and internal rotation. *Id.* at 179.

On October 21, 2018, Petitioner reported to an emergency department that he had "Tetanus shot in R[ight] deltoid" and that he has had persistent right arm pain "since receiving injection". Ex. 2 at 160-63. Petitioner "traces the origin of the pain to a tetanus shot and right shoulder this summer after which he had skin reaction selling and redness."

---

[3] The parties' briefs also addressed Petitioner's success at establishing a causation-in-fact claim, but because I am determining that a Table claim has been demonstrated preponderantly, I do not discuss those arguments.


*Id.* at 161. Petitioner was diagnosed with chronic right shoulder pain and was assessed with "persistent shoulder pain and pattern of impingement syndrome or rotator cuff injury…." *Id.* at 162.

Petitioner next sought care on October 22, 2018, at the Levitt's Mill Free Health Center. Ex. 3 at 33. Petitioner reported continued right shoulder pain for three months that began after a "Td vaccine" in early July. *Id.* A physical examination revealed tenderness in his right deltoid, right lateral epicondyle, diminished range of motion, and positive impingement testing. Petitioner was diagnosed with right shoulder pain, with differential diagnoses including rotator cuff injury secondary to "Td vaccine", impingement syndrome, frozen shoulder, and cervical radiculopathy. *Id.*

On October 23, 2018, Petitioner had an orthopedic evaluation with Dr. Christian Basque. Ex. 2 at 151-56. He reported right shoulder pain for three months that started after a tetanus vaccine, including pain radiating down to his fingers accompanied by numbness. *Id.* at 153. An examination showed a reduced range of motion and pain with all range of motion. *Id.* at 152-55. Dr. Basque stated that "he had adhesive capsulitis." The record further states that the Petitioner is left-hand dominant.

Petitioner underwent and EMG study on November 7, 2018. Ex. 2 at 150. The results indicated "very mild median nerve entrapment at the wrist", but no evidence of brachial plexitis radiculopathy or additional focal nerve compression to account for patient's clinical symptoms." *Id.* About a week later, on November 13, 2018, Petitioner saw Dr. Meredith Mayo for an orthopedic consultation. Ex. 2 at 146. The record states that Petitioner's injury was in his right shoulder and started after a "shot". *Id.* An examination showed a full range of motion, but reduced strength and positive impingement tests.

Petitioner had an MRI on his right shoulder on February 8, 2019. Ex. 2 at 140. The record indicates the pain "[b]egan w/tetanus shot." *Id.* The impression including a tearing of the supraspinatus tendon, interstitial tearing of the subscapularis tendon, and right rotator cuff tendinitis. *Id.* at 140-41. On February 15, 2019, Petitioner saw Dr. Mayo to discuss his ongoing shoulder pain and the MRI results. Ex. 2 at 135. Physical therapy was recommended, and a corticosteroid injection was refused. *Id.*

Petitioner attended seven physical therapy sessions between February 19, 2019 and April 18, 2019. Ex. 2 at 106-31. At the initial evaluation, Petitioner reported that the

injury occurred "approx. [a] year ago when he received a tetanus shot…." *Id.* at 127, 128. Petitioner also stated that he "had to quit his job due to pain". *Id.* at 128.[4]

On April 25, 2019, Petitioner was seen for a follow-up regarding his right shoulder. Ex. 2 at 98-105. At that time, surgical intervention was recommended. *Id.* at 103. Petitioner underwent arthroscopic surgery in his right shoulder including subacromial decompression, rotator cuff repair, and distal clavicle excision, on May 29, 2019. Ex. 2 at 61.

On June 4, 2019, Petitioner established care with a new primary care physician, Dr. Truong. Ex. 2 at 52. When discussing his current problems, Petitioner stated that he had a right rotator cuff injury due to a tetanus vaccine. *Id.* at 53. Petitioner also stated that "[i]t was recorded that he received the vaccine on the left arm" but "they documented it wrong…." *Id.* At a follow-up with Dr. Mayo on July 19, 2019, Petitioner reported he was slowly improving and progressing with therapy, and Dr. Mayo stated he was "right on target." *Id.* at 33. From June 20, 2019, through August, 2019, Petitioner attended ten post-operative physical therapy sessions. *Id.* at 14-31, 44.

As of October 25, 2019 (over four months after surgery), Petitioner continued to report pain, numbness, reduced range of motion, and weakness. Ex. 7 at 574. Dr. Truong stated that Petitioner was "not exactly where I would expect him to be over 5 months out from recovery. A second EMG study was conducted on November 6, 2019. *Id.* at 542. The study revealed minor median nerve entrapment at the wrist, but no active or chronic radiculopathy. *Id.* Since then, Petitioner has shown improvement, but reported reduced range of motion throughout the winter of 2019-20. Ex. 7 at 512. A second MRI on December 18, 2019 revealed small partial thickness tears. Ex. 7 at 527. A second surgery occurred on February 6, 2020 consisting of arthroscopic debridement, rotator cuff repair, and carpal tunnel release. Ex. 7 at 389-90, 402-03.

Petitioner attended five post-operative physical therapy sessions between March 2, 2020, and April 15, 2020. Ex. 7 at 333, 147-48. On May 18, 2020, Petitioner started doing physical therapy at home due to the COVID pandemic. *Id.* at 84. On June 15, 2020, Petitioner had a telehealth visit. Ex. 7 at 75-76. He reported he felt "like things are progressing which is thankful to him." *Id.* at 75. His doctor agreed and stated that his shoulder was progressing well without any issues.

---

[4] Petitioner reported other issues impacted his ability to work, including termination "due to racial reason", and mental health reasons. See Ex. 2 at 52-53.

### III. Effort to Correct Vaccine Administration Record

On January 28, 2019, Petitioner requested the medical records recording the vaccination site be corrected, and the site of vaccination be change from left to right deltoid. Ex. 2 at 200. Petitioner's request was denied on March 15, 2019, however, because the record "was not created by the organization or the person or entity that created the information is no longer available to make the amendment." *Id.* at 202. Petitioner appealed the decision on March 28, 2019 and stated that "I had received the shot in my right arm as I am left handed and the tetanus shot was given in my non-dominant arm, which is my right arm." *Id.* at 204. The request was again denied because the vaccination site could not be verified due to "the nurse who administered the vaccine ... no longer working" at the hospital. *Id.* at 206-07.

### III. Affidavit Evidence

Petitioner submitted an affidavit in support of his claim, which was signed on November 24, 2020. Ex. 5. Petitioner states that he is left-handed and received a Tdap vaccine in his right arm on July 7, 2018. *Id.* at 1-2. Petitioner explained that he delayed in seeking treatment because he thought the pain and weakness was a short-term effect. *Id.* at 3.

Sherri Host, Petitioner's fiancé, also submitted an affidavit in support of Petitioner's claim. Ex. 9. Ms. Host states that she was present in the room when Petitioner received the Tdap vaccine. *Id.* at 2. Further, she states that the Tdap vaccine "was given to [Petitioner's] right shoulder because he is left-handed. *Id.*

### IV. Parties' Arguments

Petitioner asserts that he has suffered an On-Table SIRVA, and that he meets the Table requirements for a SIRVA. Mot. at 29-48. Respondent argues that Petitioner has failed to show he is entitled to compensation. Specifically, Respondent argues that Petitioner cannot establish a right shoulder SIRVA Table claim because the records indicate his vaccination was administered in his left arm. Opp. at 13.

### V. Fact Findings and Ruling on Entitlement

Pursuant to Vaccine Act Section 13(a)(1)(A), a petitioner must prove, by a preponderance of the evidence, the matters required in the petition by Vaccine Act Section 11(c)(1). In addition to requirements concerning the vaccination received, the

5

duration and severity of petitioner's injury, and the lack of other award or settlement,[5] a petitioner must establish that he suffered an injury meeting the Table criteria, in which case causation is presumed, or an injury shown to be caused-in-fact by the vaccination he received. Section 11(c)(1)(C).

The most recent version of the Table, which can be found at 42 C.F.R. § 100.3, identifies the vaccines covered under the Program, the corresponding injuries, and the time period in which the particular injuries must occur after vaccination. Section 14(a). Pursuant to the Vaccine Injury Table, a SIRVA is compensable if it manifests within 48 hours of the administration of an influenza vaccine. 42 C.F.R. § 100.3(a)(XIV)(B). A vaccine recipient shall be considered to have suffered SIRVA if such recipient manifests all of the following:

> (i) No history of pain, inflammation or dysfunction of the affected shoulder prior to intramuscular vaccine administration that would explain the alleged signs, symptoms, examination findings, and/or diagnostic studies occurring after vaccine injection;
>
> (ii) Pain occurs within the specified time frame;
>
> (iii) Pain and reduced range of motion are limited to the shoulder in which the intramuscular vaccine was administered; and
>
> (iv) No other condition or abnormality is present that would explain the patient's symptoms (*e.g.* NCS/EMG or clinical evidence of radiculopathy, brachial neuritis, mononeuropathies, or any other neuropathy).

42 C.F.R. § 100.3(c)(10).

A special master must consider, but is not bound by, any diagnosis, conclusion, judgment, test result, report, or summary concerning the nature, causation, and aggravation of petitioner's injury or illness that is contained in a medical record. Section 13(b)(1). "Medical records, in general, warrant consideration as trustworthy evidence. The records contain information supplied to or by health professionals to facilitate diagnosis and treatment of medical conditions. With proper treatment hanging in the balance, accuracy has an extra premium. These records are also generally

---

[5] In summary, a petitioner must establish that he received a vaccine covered by the Program, administered either in the United States and its territories or in another geographical area but qualifying for a limited exception; suffered the residual effects of his injury for more than six months, died from his injury, or underwent a surgical intervention during an inpatient hospitalization; and has not filed a civil suit or collected an award or settlement for his injury.  See § 11(c)(1)(A)(B)(D)(E).

contemporaneous to the medical events." *Cucuras v. Sec'y of Health & Hum. Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 1993).

Accordingly, where medical records are clear, consistent, and complete, they should be afforded substantial weight. *Lowrie v. Sec'y of Health & Hum. Servs.*, No. 03-1585V, 2005 WL 6117475, at *20 (Fed. Cl. Spec. Mstr. Dec. 12, 2005). However, the Federal Circuit has recently "reject[ed] as incorrect the presumption that medical records are always accurate and complete as to all of the patient's physical conditions." *Kirby v. Sec'y of Health & Hum. Servs.*, 997 F.3d 1378, 1383 (Fed. Cir. 2021). Medical professionals may not "accurately record everything" that they observe or may "record only a fraction of all that occurs." *Id.*

Medical records may be outweighed by testimony that is given later in time that is "consistent, clear, cogent, and compelling." *Camery v. Sec'y of Health & Hum. Servs.*, 42 Fed. Cl. 381, 391 (1998) (citing *Blutstein v. Sec'y of Health & Hum. Servs.*, No. 90-2808, 1998 WL 408611, at *5 (Fed. Cl. Spec. Mstr. June 30, 1998). The credibility of the individual offering such testimony must also be determined. *Andreu v. Sec'y of Health & Hum. Servs.*, 569 F.3d 1367, 1379 (Fed. Cir. 2009); *Bradley v. Sec'y of Health & Hum. Servs.*, 991 F.2d 1570, 1575 (Fed. Cir. 1993).

The special master is obligated to fully consider and compare the medical records, testimony, and all other "relevant and reliable evidence contained in the record." *La Londe v. Sec'y of Health & Hum. Servs.*, 110 Fed. Cl. 184, 204 (2013) (citing § 12(d)(3); Vaccine Rule 8); *see also Burns v. Sec'y of Health & Hum. Servs.*, 3 F.3d 415, 417 (Fed. Cir. 1993) (holding that it is within the special master's discretion to determine whether to afford greater weight to medical records or to other evidence, such as oral testimony surrounding the events in question that was given at a later date, provided that such determination is rational).

### A. Factual Findings Regarding a Table SIRVA

After a review of the entire record, I find that a preponderance of the evidence demonstrates that Petitioner has satisfied the QAI requirements for a Table SIRVA.

#### 1. Petitioner Likely Received the Tdap Vaccine in his Right Shoulder

Respondent contends that although Petitioner alleges a right SIRVA, the vaccine record indicates the vaccine was given in his left arm. Opp. at 12-13. Respondent's reading of the administration record is correct (*see* Ex. 8 at 827 (stating the vaccine was

7

administered in Petitioner's left arm), but his argument does not take into account the totality of the evidence, which soundly supports a right side vaccine administration finding.

The overall medical records, coupled with Petitioner's witness statement, establish that Petitioner consistently and repeatedly reported to treaters right shoulder pain that was caused by a Tdap vaccine received *in that shoulder*. *See*, *e.g.*, Ex. 3 at 34 (record stating that Petitioner reported right shoulder pain "regarding Td vaccination"); Ex. 2 at 179 (reporting right shoulder pain "from a tetanus 7/7/18"); *Id.* at 160-63 (stating that Petitioner had a tetanus shot in his right arm and has had persistent right arm pain "since receiving injection"). Further, Petitioner consistently sought care for his right shoulder due to pain he linked to the Tdap vaccination. *See*, *e.g.*, Ex. 3 at 33 (record stating Petitioner reported continued right shoulder pain that began after a "Td vaccine" in early July) Petitioner's right shoulder pain started "right after having a flu shot").

Additionally, Petitioner's affidavit provides corroborating evidence. For example, Petitioner states that he is left-handed and received the vaccination in his non-dominant right arm. Ex. 5 at 1-2; Ex. 9 at 2; *see also* Ex. 2 at 204 (stating that Petitioner is left-handed). Further, Petitioner attempted to correct the record in January of 2019. Ex. 2 at 200-07.

These records provide sufficient evidence that the vaccine was likely administered in Petitioner's right shoulder to overcome the contrary administration record. The subsequent treatment records gain strength as well given their temporal proximity to the date of vaccination. The only contrary record comes from the administration record itself. While that document is both the first contemporaneous item of evidence relevant to this fact dispute, it finds no other corroboration in the overall record – and I do not give it excessive weight simply, since it is consistently observed in SIRVA cases in the Program that the administration record is incorrect. Nor does the fact that Petitioner sought to correct the erroneous administration record impact my finding; indeed, this is not a case where a claimant sought to do so after the case was filed **CORRECT????**

### 2. No Prior Right Shoulder Condition or Injury Would Explain Petitioner's Symptoms

Another requirement for a Table SIRVA is a lack of problems associated with the affected shoulder prior to vaccination that would explain the symptoms experienced after vaccination. 42 C.F.R. § 100.3(c)(10)(i). But Petitioner's records do not contain evidence of a prior condition or injury that would explain his current symptoms. See Ex. 3 at 35-50 (pre-vaccination records that do not report a shoulder condition or injury). Additionally,

Respondent does not contest that Petitioner meets this criterion for a Table SIRVA. Therefore, Petitioner meets this requirement.

### 3. Onset of Petitioner's Injury Occurred within Forty-Eight Hours of his Vaccination

I also find that there is a preponderance of evidence that onset of Petitioner's injury was within forty-eight hours of his vaccination. Respondent does not contest this aspect of Petitioner's claim, and the medical records, coupled with Petitioner's witness statement, establish onset of his injury close-in-time to vaccination. Ex. 3 at 34 (reporting discomfort at site of tetanus vaccine on July 9, 2018); Ex. 5 at 2.

### 4. Petitioner's Pain was Limited to his Right Shoulder

The evidence supports the conclusion that Petitioner's pain was limited to his right shoulder. Respondent does not contest this aspect of the claim, and the records consistently report shoulder pain and loss of range of motion in his right shoulder, which is consistent with other SIRVA cases. Petitioner's medical procedures were also limited to his right shoulder.[6] Accordingly, preponderant evidence establishes that Petitioner's pain was limited to his right shoulder.

### 5. There is No Evidence of Another Condition or Abnormality that would Explain Petitioner's Current Symptoms

The last criteria for a Table SIRVA state that there must be no other condition or abnormality which would explain a petitioner's current symptoms. 42 C.F.R. § 100.3(c)(10)(iv). Respondent does not contest this aspect of Petitioner's claim, and the records do not contain any evidence that another condition or abnormality that would explain Petitioner's symptoms. Accordingly, preponderant evidence establishes that Petitioner's pain was limited to his right shoulder.

### B. Other Requirements for Entitlement

In addition to establishing a Table injury, a petitioner must also provide preponderant evidence of the additional requirements of Section 11(c). The overall record contains preponderant evidence to fulfill these additional requirements.

---

[6] I note that Petitioner also suffered from carpal tunnel syndrome, and some procedures addressed both conditions. Ex. 7 at 389-90, 402-03.

The record shows that Petitioner received a flu vaccine intramuscularly July 7, 2018, in the United States. Ex. 8 at 827; *see* Section 11(c)(1)(A) (requiring receipt of a covered vaccine); Section 11(c)(1)(B)(i)(I) (requiring administration within the United States or its territories). There is no evidence that Petitioner has collected a civil award for his injury. Ex. 6; Section 11(c)(1)(E) (lack of prior civil award).

As stated above, I have found that the onset of Petitioner's right shoulder pain was within 48 hours of vaccination. *See* 42 C.F.R. § 100.3(c)(10)(ii) (setting forth this requirement). I have also found that there is no other condition which would explain Petitioner's current symptoms. 42 C.F.R. § 100.3(a)(XIV)(B) (listing a time frame of 48 hours for a Table SIRVA following receipt of the influenza vaccine). Therefore, Petitioner has satisfied all requirements for a Table SIRVA.

The last criteria which must be satisfied by Petitioner involves the duration of his SIRVA. For compensation to be awarded, the Vaccine Act requires that a petitioner suffer the residual effects of his or her left shoulder injury for more than six months or required surgical intervention. *See* Section 11(c)(1)(D)(i) (statutory six-month requirement). The records demonstrate, and Respondent does not contest, that Petitioner suffered the residual effects of his shoulder injury for more than six months and underwent two surgical procedures. Ex. 2 at 61; Ex. 7 at 389-90. Thus, this requirement is also met.

Based upon all of the above, Petitioner has established that he suffered a Table SIRVA. Additionally, he has satisfied all other requirements for compensation. I therefore find that Petitioner is entitled to compensation in this case.

## Conclusion

**In view of the evidence of record, I find that there is preponderant evidence that Petitioner satisfies the QAI requirements for a Table SIRVA. Further, based on the evidence of record, I find that Petitioner is entitled to compensation.**

**IT IS SO ORDERED.**

<u>s/Brian H. Corcoran</u>
Brian H. Corcoran
Chief Special Master